UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BARBARA SEAMAN,

               *Plaintiff*,

    -against-

THIS IS L., INC.,

               *Defendant*.

24-CV-3524 (ARR) (JAM)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

      Plaintiff, Barbara Seaman, brings this putative class action against defendant, This Is L., Inc., asserting claims under New York's General Business Law ("GBL"), *see* N.Y. Gen. Bus. Law §§ 349–50 (McKinney 2024), and an alternative claim of unjust enrichment. Compl. ¶¶ 34–39, ECF No. 1. According to plaintiff's complaint, defendant manufactures and markets tampons whose packaging includes a misleading statement: "NO . . . CHLORINE BLEACHING, DYES OR FRAGRANCES." *Id.* ¶¶ 1, 4. While neither party disputes the literal truth of this statement, plaintiff contends that the statement is nevertheless misleading because the tampons in fact contain titanium dioxide, which is a "synthetically prepared powder used as a white pigment." *Id.* ¶ 4. Defendant has moved to dismiss plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, arguing that the statement in question cannot be misleading as a matter of law because "the [p]roduct's label does not state that the [t]ampons contain no coloring and affirmatively discloses the use of titanium dioxide." Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mot.") at 2, ECF No. 21-1. For the reasons set forth below, I deny defendants' motion to dismiss.

## BACKGROUND

I assume the parties' familiarity with plaintiffs' complaint, which provides the factual context for this action at this stage. The following facts, which are particularly relevant to the present motion, are drawn from plaintiffs' complaint and presumed to be true. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

Defendant, This Is L., Inc., manufactures and markets "L."-branded tampons (the "product"). Compl. ¶ 1. The front label of the product contains, inter alia, the following statement: "NO RAYON, CHLORINE BLEACHING, DYES OR FRAGRANCES." *Id.* ¶ 2. While plaintiff concedes that this statement is "literally true," she contends that it is nevertheless "misleading" because the product in fact contains "titanium dioxide, a synthetically prepared powder used as a white pigment." *Id.* ¶ 4.

Plaintiff, Barbara Seaman, is a resident of Brooklyn, New York. *Id.* ¶ 21. Desiring "to purchase tampons that do not add unnecessary ingredients, such as coloring," *id.* ¶ 22, she purchased defendant's product "on several occasions at various stores in or near the Flatbush neighborhood of Brooklyn, including between 2021 and 2024 at Duane Reade, CVS, Walgreens, and Target," *id.* ¶ 23. Plaintiff further alleges that she "read and relied upon the statement . . . NO [] CHLORINE BLEACHING [or] DYES" before purchasing the products, *id.* ¶ 24, and that she "paid more for the [p]roduct than she would have paid absent the misleading statement," *id.* ¶ 26.

Plaintiff filed suit, asserting claims under sections 349 and 350 of the New York GBL, as well as a claim of unjust enrichment. *Id.* ¶¶ 34–39. She seeks to represent a class under Fed. R. Civ. P. 23, defined as "[a]ll persons in New York who purchased the [p]roduct during the statutes of limitations for each cause of action alleged." *Id.* ¶ 27.

## LEGAL STANDARD

When a motion to dismiss is brought under Rule 12(b)(6), I must liberally construe the claims set forth in the complaint, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). In resolving a motion brought under this rule, I may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken," and documents which the plaintiff "relied on in bringing suit," thus rendering them "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation and internal quotation marks omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'" (quoting *Twombly*, 550 U.S. at 555)).

## DISCUSSION

### I.   Defendant's Exhibit

The parties agree that the statement on defendant's products, "NO [] CHLORINE BLEACHING [or] DYES," is "literally true," Compl. ¶ 4, because the whitening agent titanium dioxide "is technically a pigment, not a dye or a bleach," Pl.'s Mem. L. Opp'n Def.'s Mot. Dismiss at 8 ("Pl.'s Opp'n"), ECF No. 22. Plaintiff contends, however, that "reasonable consumers" are unaware of this distinction and could therefore be misled into believing the product contains no coloring agent at all. *Id.* In response, defendant argues that, as alleged in plaintiff's complaint, the product's labeling is at most "ambiguous," and that "any ambiguity concerning the [t]ampons'

ingredients is easily resolved when considering the packaging as a whole." Def.'s Mot. at 8. In support of this argument, defendant has submitted an exhibit depicting the product's "complete label," which includes, on the reverse, a list of ingredients. Decl. of Suzanne Johnston Supp. Def.'s Mot. Dismiss ¶ 4 ("Johnston Decl."), ECF No. 21-2. That list includes "[t]itanium [d]ioxide," next to the words "makes material look white, naturally occurring." *Id.*, Ex. A.

As a threshold matter, the parties dispute whether I may consider the exhibit submitted by defendant in resolving the instant motion. *Compare* Pl.'s Opp'n at 7–8 ("[T]here is no competent evidence before this Court that the [ingredient list including titanium dioxide] was consistently displayed on the back of every . . . package."), *with* Def.'s Reply Mem. L. Supp. Mot. Dismiss at 6 ("Def.'s Reply"), ECF No. 23 ("The Johnston Declaration accurately and undisputably identifies the full label corresponding to the partial and incomplete label [contained in plaintiff's complaint]."). Although ordinarily, in resolving a motion under Rule 12(b)(6), my review is confined to the complaint itself and documents that the complaint incorporates by reference, there is also an exception permitting me to consider "documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference." *Donoghue v. Gad*, No. 21-CV-7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers*, 282 F.3d at 152–53). I find that the product's full label is a document integral to plaintiff's complaint, and I will therefore consider it in deciding this motion.[1] The core of the dispute between the parties is thus whether the language

_____

[1] As the Second Circuit has observed, this exception "usually" applies to documents "upon which the plaintiff's complaint stands or falls, but which for some reason . . . w[ere] not attached to the complaint." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). This appears to be just such a case: Plaintiff presumably did not attach the full label to her complaint because she feared "the document, read in its entirety, would undermine the legitimacy of [her] claim." *Id.* It is not permissible to "generat[e] complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Id.* Moreover, although plaintiff generally asserts the full label is unreliable because it is "undated," Pl.'s Opp'n at 2, there does not appear to be any genuine

4

on the *back* of the product's label (disclosing the presence of titanium dioxide as a whitening agent) is sufficient as a matter of law to "appropriately clarify a reasonable consumer's understanding," Def.'s Mot. at 8, of the ambiguous and potentially misleading statement on the *front* of the label ("NO [] CHLORINE BLEACHING [or] DYES"), Compl. ¶ 4.

## II. Plaintiff Has Plausibly Alleged the Statements Would Mislead a Reasonable Consumer.

To plead a claim under sections 349 and 350 of the New York GBL, plaintiff must show, inter alia, that "defendant engaged in deceptive or materially misleading acts or practices." *Turnipseed v. Simply Orange Juice Co.*, No. 20-CV-8677, 2022 WL 657413, at *3 (S.D.N.Y. Mar. 4, 2022). An act is "[d]eceptive" if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (citation and internal quotation marks omitted). Here, defendant argues that plaintiff's claims should be dismissed because, "as a matter of law," the allegedly deceptive statement in question "would not have misled a reasonable consumer." Def.'s Mot. at 5 (quoting *Chen*, 954 F.3d at 500). I disagree. At this early stage of the litigation, I find that plaintiff's complaint adequately alleges that defendant's conduct was deceptive and therefore unlawful.

This case turns in large part on the interpretation of the Second Circuit's precedent in *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018). There, the court considered the issue of whether and when clarifying information may, as a matter of law, "cure[]" misleading statements elsewhere on a product's packaging. *Id.* at 639. In that case, the plaintiffs alleged that they were misled by the words "whole grain" displayed on the front of boxes of Cheez-It crackers, because the prominent use of the words "whole grain" implied the crackers' grain content was mostly

---

"dispute . . . regarding the authenticity or accuracy of the document," *Faulkner v. Beer*, 463 F.3d 130, 135 (2d Cir. 2006).

whole grain, when in fact it was mostly "less nutritious white flour." *Id.* at 638. The Second Circuit held that the "whole grain" statement was potentially misleading, noting that "the misleading quality of the message is not effectively cured by implicitly disclosing the predominance of enriched white flour in small print . . . on the side of the package." *Id.* at 639. In other words, *Mantikas* stands for the proposition that, while misleading statements on the front of a product *might* in some situations be curable by including truthful clarifying information on the product's side or back, such a clarification does not *necessarily* cure a statement that is otherwise misleading.

The parties offer conflicting theories of the relevance of *Mantikas* to the instant case. In defendant's view, *Mantikas* "only applies to *unambiguously* misleading front label statements," Def.'s Mot. at 11–12 (emphasis added), and, since defendant's product is at most ambiguously misleading, *Mantikas* "does not apply to this case," *id.* at 12. Plaintiff contends that the statement "NO [] CHLORINE BLEACHING [or] DYES . . . misleads reasonable consumers into believing that the [p]roduct contains no coloring agent" and that, under *Mantikas*, "the smaller print disclosure of titanium dioxide in the ingredients list is not sufficient as a matter of law to cure the deception." Pl.'s Opp'n at 7. As I will explain in further detail, I disagree with defendant's characterization of *Mantikas*, and I agree with plaintiff that *Mantikas* supports her position.

First, defendant's argument that *Mantikas* has been "limit[ed] . . . to cases 'involv[ing] affirmatively inaccurate statement[s]'" is unpersuasive. Def.'s Mot. at 13 (quoting *Foster v. Whole Foods Mkt. Grp., Inc.*, No. 23-285-CV, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (summary order)). This argument misconstrues an unpublished summary order in which the Second Circuit characterized *Mantikas* as applicable only where a label includes "clearly inaccurate factual representations." *Foster*, 2023 WL 8520270, at *2. Defendant goes too far in arguing that the summary order's characterization renders *Mantikas* inapposite here. In *Mantikas*, the words

"whole grain" displayed on the boxes of Cheez-It crackers were not literally untrue—the product did, in fact, contain some whole grain. *Mantikas*, 910 F.3d at 635–36. Thus, the description of the "whole grain" statements in *Mantikas* as "clearly inaccurate," *Foster*, 2023 WL 8520270, at *2, is simply another way of stating the Court's ultimate holding: i.e., that the statements were misleading, or at least that a reasonable juror could find as much. I conclude that, under *Mantikas*, the literal truth of the statements on a product's packaging (or, said otherwise, the lack of an "affirmatively inaccurate statement") is not determinative of whether the statements are misleading as a matter of law.

Second, and perhaps more importantly, plaintiff has identified another similarity between this case and *Mantikas*: She argues that the purportedly curative information on the back of defendant's products was *itself* misleading. *See* Pl.'s Opp'n at 8. Specifically, she asserts that the phrase "makes material look white, naturally occurring" (which appears next to "titanium dioxide") is misleading because "the words could be reasonably understood to mean that titanium dioxide 'naturally occur[s]' in other ingredients," when, in fact, it is an artificial additive. *Id.* I agree that, conceivably, this statement could mislead a reasonable consumer to believe that titanium dioxide, the only coloring agent disclosed in the list of ingredients, is "naturally occurring" in the product's other ingredients—thereby confirming, rather than dispelling, the consumer's false impression that the product contains no artificial coloring agents. *Cf. Mantikas*, 910 F.3d at 637 (noting that disclosures on the side of the box "d[id] not adequately dispel the inference communicated by the front of the package"). Consequently, like the court in *Mantikas*, I am unable to conclude, as a matter of law, "that these disclosures on the [back] of the [product] render [plaintiff's] allegations of deception implausible." *Id.*

Nor do the other cases cited by defendant convince me that plaintiff's claims must be dismissed as implausible. For instance, defendant relies on *Kennedy v. Mondelez Global LLC*, a case in which the plaintiff contended that the "defendant's graham cracker package was misleading because it contained sugar when the front label represented that the crackers 'contain[ed] no high fructose corn syrup.'" Def.'s Mot. at 6 (quoting *Kennedy*, No. 19-CV-302, 2020 WL 4006197, at *12 n.21 (E.D.N.Y. July 10, 2020), *report and recommendation adopted*, No. 19-CV-302 (E.D.N.Y. Sept. 17, 2020)). The court in *Kennedy* dismissed the plaintiff's GBL claims, reasoning that "the phrase 'contains no high fructose corn syrup' is a factually correct statement that fails to convey the inferences Plaintiffs allege"—that is, the inference that the graham crackers did not contain sugar. *Kennedy*, 2020 WL 4006197, at *12 n.21. This case is distinguishable from *Kennedy*, though, because while a reasonable consumer would know that "sugar" is not a type of "high fructose corn syrup," the same consumer might not know that titanium dioxide is a "pigment" rather than a type of "dye" or "bleach." Thus, the statement "NO [] CHLORINE BLEACHING [or] DYES," Compl. ¶ 4, on the front of defendant's product is substantially more likely to mislead a reasonable consumer than the "no high fructose corn syrup" statement at issue in *Kennedy*.

Likewise, defendant's reliance on *Henry v. Campbell Soup Co.*, No. 22-CV-431 (LDH), 2023 WL 2734778 (E.D.N.Y. Mar. 31, 2023), is unavailing. In that case, the plaintiff brought GBL claims based on a soup can whose label read "NO MSG ADDED." *Id.* at *1. She argued that this statement was misleading because the product in fact contained naturally-occurring "free glutamate"—a substance that is present in both MSG, a food additive, as well as in other, non-artificial foods. *Id.* The court dismissed the plaintiff's GBL claims, noting that the product's label included the following clarifying statement: "SMALL AMOUNT OF GLUTAMATE OCCURS

NATURALLY IN YEAST EXTRACT." *Id.* The court reasoned that this clarification cured any deception, because, "[u]nlike in *Mantikas*, the disclaimers here are not themselves misleading." *Henry*, 2023 WL 2734778, at *3. The instant case is more akin to *Mantikas* than to *Henry* because here, like in *Mantikas*, plaintiff does contend that the purported clarification on the back of the product is itself misleading. *See* Pl.'s Opp'n at 8. Moreover, while in *Henry* there was no dispute that free glutamate was naturally occurring in the defendant's product, here, plaintiff asserts that titanium dioxide is not "naturally occurring" in *any* of the product's other ingredients. *Id.* In sum, *Henry* supports plaintiff's position, not defendant's.

Finally, the parties dispute the relevance of a case recently decided in the Northern District of Illinois, *Paulson v. This Is L. Inc.*, No. 22-CV-04665, 2024 WL 1363663 (N.D. Ill. Mar. 28, 2024), which involved a claim under the Illinois consumer fraud statute and concerning the same product. *Compare* Def.'s Mot. at 10–13 *with* Pl.'s Opp'n at 5–9. While this out-of-circuit authority is certainly not binding on me, I find that it does lend some support to plaintiff's claim here. The court in *Paulson* denied the defendant's motion to dismiss, holding that "a reasonable consumer could construe Defendant's truthful labeling [i.e., the statement 'NO [] CHLORINE BLEACHING [or] DYES'] to signal the complete absence of any coloring agent . . . especially where, as here, Defendant's theory requires a consumer to parse the Product's label." *Paulson*, 2024 WL 1363663, at *5. Defendant argues that *Paulson* is irrelevant to this case because the *Paulson* court was compelled to apply the Seventh Circuit's precedent in *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), which, according to defendant, is incompatible with the Second Circuit's holding in *Mantikas*. Def.'s Mot. at 11.

Seeing no irreconcilable conflict between *Bell* and *Mantikas*, I find defendant's argument to be without merit. Defendant contends that the Second Circuit, unlike the Seventh, has limited

its holding in *Mantikas* to only those cases "involv[ing] unambiguously false representations," as opposed to statements that are "literally true" but "allegedly ambiguous." Def.'s Mot. at 12. As I explained above, defendant's interpretation of *Mantikas*'s holding is implausible because *Mantikas* itself involved statements about "whole grains" that were not literally false. Defendant further relies on the Second Circuit's summary order in *Foster*, where the court did characterize *Mantikas* as involving "*clearly* inaccurate factual representations." *Foster*, 2023 WL 8520270, at *2 (emphasis added). But, as Judge Kanne of the Seventh Circuit explained in his concurrence in *Bell*, this type of argument "make[s] [too] much of the word 'clearly.'" *Bell*, 982 F.3d at 494 (Kanne, J., concurring). "That one word is simply too weak a basis to depart from the signals projected" by courts, including the Second Circuit in *Mantikas*, in cases where "there was room to argue about the precise meaning of the front-label claims." *Id.* In sum, defendant's attempt to distinguish the Second Circuit's standard under *Mantikas* from the Seventh Circuit's in *Bell* is unavailing.

For these reasons, I conclude that plaintiff has sufficiently alleged that defendant's statements on the front of the product would mislead a reasonable consumer.

## III.   Plaintiff Has Plausibly Alleged Injury and Causation.

To make out a plausible GBL claim, plaintiff is required to "demonstrate[] she was injured as a result of the [allegedly] deceptive act." *Orrico v. Nordic Nats., Inc.*, No. 22-CV-03195 (NRM), 2023 WL 6308015, at *7 (E.D.N.Y. Sept. 28, 2023). She must also allege causation: that is, "the plaintiff must show that the defendant's material deceptive act caused the injury" in question. *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45 (2004). Defendant argues that plaintiff's complaint should be dismissed for failure to allege either injury or causation. *See* Def.'s Mot. at 13–16; *see*

*also* Pl.'s Opp'n at 9–11. For the reasons that follow, I find that plaintiff has plausibly alleged these elements of her claim, and I therefore deny defendant's motion to dismiss on this basis.

### A. Injury

Plaintiff claims in her complaint that she was injured by defendant's alleged deception because she "paid more for the [p]roduct than she would have paid absent the misleading statement." Compl. ¶ 26. In other words, she alleges "an overpayment or 'price premium,' whereby a plaintiff pays more than she would have but for the deceptive practice." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016). It is well established that, in general, alleging such a "price premium" is sufficient to establish injury under the GBL at the pleading stage. *Silva v. Hornell Brewing Co.*, No. 20-CV-756 (ARR), 2020 WL 4586394, at *4 (E.D.N.Y. Aug. 10, 2020). Defendant contends, however, that plaintiff's complaint should be dismissed because it contains only "conclusory" allegations of injury and because it fails to "identify other allegedly 'similar' products or the price at which they are sold." Def.'s Mot. at 15. This argument is without merit, as I will proceed to explain.

To allege injury under a "price premium" theory, a plaintiff need only "stat[e] that [s]he paid more for the [p]roduct than [s]he would have if not for the . . . representation" at issue. *Silva*, 2020 WL 4586394, at *4. "[S]pecific allegations," such as the price the plaintiff actually paid for the product or the prices of competitor products, "are not required." *Id.* Defendant cites one case decided in this district holding that the plaintiff failed to establish a price premium injury because he "provide[d] no facts regarding what the premium was, what price he paid for the products, or the price of non-premium products." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018). But defendant's reliance on *Colella* is unavailing because, as another court in this district has noted, the Second Circuit has more recently indicated that "a plaintiff's 'failure to

11

identify the prices of competing products to establish the premium that she paid is not fatal to her claim'" at the motion to dismiss stage. *Orrico*, 2023 WL 6308015, at *7 (quoting *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020)). I therefore conclude that, since plaintiff has alleged that she was charged a price premium due to defendant's allegedly misleading statement, she has sufficiently alleged injury for purposes of the GBL.[2]

### B. Causation

Defendant makes the additional argument that plaintiff's claims should be dismissed because they "fail to clear the causation hurdle," Def.'s Mot. at 13, but this argument is also unavailing. As New York's highest court has held, "[t]o satisfy the causation requirement, nothing more is required than that a plaintiff suffer a loss because of defendants' deceptive act." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30 (2000) (alterations adopted and internal quotation marks omitted)). Plaintiff's complaint meets this bar, and the cases cited by defendant are not to the contrary. For instance, in *Oden v. Boston Scientific Corp.*, the court concluded that the plaintiff had failed to allege causation because "the [c]omplaint merely allege[d] [p]laintiff's purported 'reliance' without providing any underlying factual details concerning when, where and how such reliance arose." 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018). Here, in contrast, plaintiff alleges that she "purchased" the product in

---

[2] Defendant also cites *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-cv-04697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016), in support of this argument. That case is distinguishable because, there, "[p]laintiffs [did] not allege[] that they paid a higher price for the [product] than they otherwise would have, absent deceptive acts." *Id.*; *cf.* Compl. ¶ 26 (alleging that plaintiff "paid more for the [p]roduct than she would have paid absent the misleading statement"). Moreover, "at least three district courts in this Circuit have disagreed with the holding of *Izquierdo* because it contradicts the weight of the law in this Circuit," where "[c]ourts routinely allow complaints that lack allegations of both cheaper and exactly comparable products to survive motions to dismiss." *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (citation and internal quotation marks omitted).

question "in or near the Flatbush neighborhood of Brooklyn . . . between 2021 and 2024 at Duane Reade, CVS, Walgreens, and Target" and that she "read and relied upon" the allegedly misleading statement on the product's packaging before making her purchases. Compl. ¶¶ 23–24. Given the inclusion of these facts, the complaint clearly alleges that "plaintiff suffer[ed] a loss because of defendant's deceptive act." *Rodriguez*, 300 F.R.D. at 147. I therefore deny defendant's motion to dismiss on these grounds.

## IV.    Plaintiff's Unjust Enrichment Claim Survives Dismissal.

Plaintiff's complaint includes an additional claim of unjust enrichment, seeking "restitution and disgorgement" of defendant's profits allegedly obtained through deception. Compl. ¶¶ 38–39. Defendant moves to dismiss this claim, arguing both that it "fails for the same reason as her GBL claims" and that "[r]egardless, the unjust enrichment claim also fails as duplicative" of plaintiff's claim under the GBL. Def.'s Mot. at 16–17. Having concluded that plaintiff sufficiently made out her claim under the GBL, I need only consider whether her unjust enrichment claim is impermissibly duplicative of her GBL claim. Although the law on this issue is not free from doubt, I conclude that plaintiff's unjust enrichment claim may proceed at this time, and I deny defendant's motion to dismiss this claim.

District courts in this circuit have reached varying conclusions as to whether an unjust enrichment claim can survive a motion to dismiss when it is based on the same facts as the plaintiff's claim under the GBL. The New York Court of Appeals has held that a claim for unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 740 (2012) (citations omitted). But the Second Circuit has stated, albeit in an unpublished summary order, that "a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim." *Axon*, 813 F. App'x at 706.

"Absent further guidance from the Second Circuit, there appears to be inconsistency as to how district courts in this Circuit treat unjust enrichment claims." *Winans v. Ornua Foods N. Am. Inc.*, No. 23-CV-01198, 2024 WL 1741079, at \*5 (E.D.N.Y. Apr. 23, 2024). Defendant cites several cases dismissing unjust enrichment claims as duplicative of claims under the GBL. *See* Def.'s Reply at 10–11 (first citing *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 117 (S.D.N.Y. 2021); and then citing *Bates v. Abbott Lab'ys*, No. 23-CV-387, 2024 WL 1345342, at \*19–21 (N.D.N.Y. Mar. 29, 2024)). Plaintiff cites a number of cases where the court declined to do just that. *See* Pl.'s Opp'n at 12–13 (first citing *Winans*, 2024 WL 1741079, at \*5–6; then citing *McTyere v. Apple, Inc.*, 663 F. Supp. 3d 247, 259 (W.D.N.Y. 2023); and then citing *Scholder v. Sioux Honey Ass'n Coop.*, No. 16-CV-5369, 2022 WL 125742, at \*6 (E.D.N.Y. Jan. 13, 2022)).

Noting that the state of the case law is murky, I decline to dismiss plaintiff's unjust enrichment claim at this time. *See Scholder*, 2022 WL 125742, at \*6 ("[A]lthough the unjust enrichment claim may ultimately be deemed duplicative of plaintiff's other theories of recovery, at this stage of the proceedings, [the] allegations are sufficient.").

## CONCLUSION

For the foregoing reasons, I DENY defendant's motion to dismiss in its entirety.


SO ORDERED.



_____
    */s/*
Allyne R. Ross
United States District Judge


Dated:        October 2, 2024
              Brooklyn, New York

14